UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -X

JAKWAN RIVERS et ano.,

                              Plaintiffs,

      - against -                  ORDER

NEW YORK CITY HOUSING AUTHORITY, et al.,    CV 2011-5065 (KAM)(MDG)

                             Defendants.

- - - - - - - - - - - - - - - - - - -X

    In this action brought under 42 U.S.C. § 1983, plaintiff Jakwan Rivers has moved for leave to file a Second Amended Complaint[1] to supplement the First Amended Complaint with allegations regarding events that occurred following the filing of this action and to assert an additional claim of retaliation against defendants New York City Housing Authority ("NYCHA"), John

---

[1] As a preliminary matter, I note that I have the authority to decide plaintiff's motion to amend pursuant to 28 U.S.C. § 636(b)(1)(A). See Fielding v. Tollaksen, 510 F.3d 175, 178 (2d Cir. 2007) (referring to a motion to amend as a non-dispositive motion that a magistrate judge may decide without the parties' consent"); Kilcullen v. New York State Dept. of Transp., 55 Fed. App'x 583, 584 (2d Cir. 2003) (same); Marsh v. Sheriff of Cayuga County, 36 Fed. App'x 10, 11 (2d Cir. 2002) (holding "that the magistrate judge acted within his authority in denying this motion to amend the complaint"). Thus, Fed. R. Civ. P. 72(a) governs any objections to this order. See Rekowicz ex rel. Congemi v. Sachem Cent. School Dist., 2012 WL 4172487, at *1 (E.D.N.Y. 2012); Point 4 Data Corp. v. Tri-State Surgical Supply & Equipment, Ltd., 2012 WL 3306612, at *1-*2 (E.D.N.Y. 2012); cf. Jean-Laurent v. Wilkerson, 461 Fed. App'x 18 (2d Cir. 2012) (remanding to district court to conduct de novo review of magistrate judge's denial of leave to amend which effectively dismissed state law claims which had previously survived a motion to dismiss).

Rhea, Local 237 International Brotherhood of Teamsters ("Local 237) and Gregory Floyd.

BACKGROUND

The claims in this action arise from the employment, union activities and political activities of plaintiffs Jakwan Rivers and Debra Crenshaw. Mr. Rivers began working for defendant New York City Housing Authority ("NYCHA") in 1998 and at that time became a member of defendant Local 237 International Brotherhood of Teamsters ("Local 237"). Am. Compl. ¶¶ 12-13. Rivers was later elected to the position of Shop Steward within the union and subsequently employed by Local 237 as a Business Agent. Id. ¶¶ 15, 17. In 2008, in response to what he perceived as deficiencies with union governance under the leadership of defendant Gregory Floyd, Rivers founded a business association called "Members for Change," which aspired to oust Mr. Floyd from presidency of the union, elect Mr. Rivers and other preferred candidates to leadership positions of the union and support William Thompson in his mayoral bid. Id. ¶¶ 28-30. Plaintiff Debra Crenshaw was a fellow NYCHA employee who joined Members for Change and engaged in political activities in support of the group's agenda. Id. ¶¶ 82, 86.

Both plaintiffs allege that the defendants conspired to retaliate against them for their political activities, by, inter alia, subjecting them to excessive disciplinary actions and false disciplinary reports, id. ¶¶ 40, 53, 73, 75, 90-96, 98-103;

terminating Mr. Rivers from his union position, id. ¶¶ 43; assigning plaintiffs to burdensome job assignments for which they were not trained and received inadequate support arising from his transfer to a different work location, id. ¶¶ 46-51, 54-66, 69, 74, 77, 89; endangering Mr. Rivers by disclosing his full name to residents of a housing development where he worked in 2010, id. ¶ 67; denying plaintiffs' claims for workers' compensation in 2010, id. ¶¶ 81, 105; revoking Ms. Crenshaw's supervisory authority, id. ¶ 89; denying Ms. Crenshaw's request for leave to tend to her and her husband's medical conditions, id. ¶¶ 104; and terminating Ms. Crenshaw's employment. Id. ¶ 106. Plaintiffs also contend that defendant Melethil Alexander sexually assaulted Ms. Crenshaw.

Plaintiff Rivers commenced this action on October 18, 2011. He then filed an amended complaint on February 28, 2012, on consent, to add Debra Crenshaw as plaintiff, to assert additional claims and to join Carl Walton, Melethil Alexander and Remilda Ferguson as defendants.

This Court originally set a fact discovery deadline of September 28, 2012 and extended the deadline to January 18, 2013 at a conference on November 28, 2012. By letter motion filed on December 28, 2012, Jonathan Friedman, who was then counsel of record for plaintiffs, moved, on consent, for a further extension of discovery to February 12, 2013 in order to conduct three additional depositions. Although granting this motion in light of defendants' consent, this Court cautioned "[n]o further extensions

absent a showing of utmost diligence."  Nonetheless, plaintiffs sought a further extension on February 7, 2013 due to departure of Mr. Friedman from Borrelli & Associates.  As new counsel for plaintiffs admitted, notices of depositions had not yet been sent for the three depositions previously sought.  This Court reluctantly granted the request and extended discovery to March 1, 2013 to conduct the three depositions.  After a further extension of fact discovery to March 20, 2013 to conduct one of the three depositions due to scheduling problems encountered, the parties completed discovery by the deadline.  At a pre-motion conference held on April 18, 2013, Judge Matsumoto set a schedule for briefing summary judgment motions contemplated by defendants.

On April 30, 2013, plaintiffs filed the instant second motion to amend.  This Court required them to supplement with, inter alia, a proposed pleading.  Plaintiffs then filed a proposed supplemental complaint and additional submissions.

Plaintiff Rivers now seeks pursuant to Fed. R. Civ. P. 15(d) to add allegations of retaliation that occurred subsequent to the filing of this complaint and to re-open discovery.  Sec. Mot. to Amend (ct. doc. 48), at 2-3.  Plaintiff Rivers alleges that he was arrested for driving while intoxicated in November 2012, which he promptly reported to NYCHA's Office of the Inspector General, as required by NYCHA Guidelines.  Prop. Sec. Am. Compl. (ct. doc. 54) ¶¶ 108-09.  He asserts that in April 2013, a union trustee named Curtis Scott warned Randy Thorne, a member of Members for Change,

that Mr. Rivers should not run in the upcoming union election because Mr. Scott had "stuff" on Mr. Rivers, including information regarding Mr. Rivers's arrest in November 2012.  Id. ¶¶ 110-14. Shortly after this conversation, plaintiff Rivers learned that posters had been hung in several NYCHA housing development buildings and found some which bore the caption "Is this whom you want to be the next President of Local 237" and contained photocopied sections of his arrest report with his personal information.  Id. ¶¶ 115-18.  Plaintiff contends that NYCHA must have disclosed the fact of his arrest to Local 237.  Id. ¶¶ 143-45.

In opposing plaintiff's motion, NYCHA, Mr. Rhea, Ms. Finkelman and Ms. Jasper (altogether "NYCHA defendants") argue that the supplemental pleadings fail to allege that the NYCHA defendants took any tortious actions related to the April 2013 events and that re-opening discovery now would prejudice defendants by delaying decision of summary judgment motions, briefing of which is currently stayed.  See NYCHA Resp. to Mot. to Amend (ct. doc. 50), at 2.  Local 237, Mr. Floyd, Mr. Alexander, Carl Walton and Remilda Ferguson (altogether "Union defendants") argue that the amendment is futile because the Union defendants are private actors and cannot be held liable under § 1983.  See Union Resp. to Mot. to Amend (ct. doc. 49), at 2.  The Union defendants also contend that plaintiff fails to establish that he was the victim of any adverse employment action as a result of the April 2013 events.  Id.

On January 24, 2014, plaintiff's counsel wrote in a two page letter that "Defendants Local 237 and the NYCHA have continued with their coordinated targeting of Plaintiff Rivers" and point to his transfer from his current work assignment after return from worker's compensation leave, even though he had been elected shop steward. <u>See</u> ct. doc. 61. He also charges that NYCHA failed to provide Rivers accommodations requested under the Americans with Disabilities Act and deducted amounts from his paychecks, while the Union failed to respond to Rivers's requests for assistance. <u>Id.</u> NYCHA stated in response that Rivers was assigned to a different location because he had been on an extended leave of absence of eleven months from August 2, 2012 through June 25, 2013, that plaintiff did not receive a portion of his pay because his leave had been exhausted and that plaintiff has filed a complaint with the New York Commission on Human Rights. <u>See</u> ct. doc. 63. The Union stated that a different shop steward was elected when Rivers was on leave and the Union had no involvement in accommodations under the ADA and paycheck deductions. <u>See</u> ct. doc. 62.

## DISCUSSION

Since more than twenty-one days elapsed between plaintiffs' service of the complaint on defendants and the filing of this motion and plaintiffs have already filed one amended complaint, Mr. Rivers must obtain leave of the Court before he may amend the complaint. Fed. R. Civ. P. 15(a). In this instance, plaintiff is proceeding under Rule 15(d), which permits a party to "serve a

supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading." Fed. R. Civ. P. 15(d). The Court "may permit" a party to file a supplemental pleading "on just terms." Id.

In order to be successful on a motion to supplement, the movant must allege "supplemental facts [that] connect the supplemental pleading to the original pleading." Weeks v. New York State (Div. of Parole), 273 F.3d 76, 88 (2d Cir. 2001) (citing Quaratino v. Tiffany & Co., 71 F.3d 58, 66 (2d Cir. 1995)), abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002). The Second Circuit has stated that a motion to supplement should be granted "where such supplementation will promote the economic and speedy disposition of the controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any other party." Borndholdt v. Brady, 869 F.2d 57, 68 (2d Cir. 1989). Thus, aside from the additional requirement of a connection between the supplemental and original pleadings, the standards for examining a Rule 15(d) motion to supplement are essentially the same as for a Rule 15(a) motion to amend. See, e.g., Cancel v. Goord, 2002 WL 171698 (S.D.N.Y. 2002) ("leave to supplement . . . should be liberally granted"); Milligan v. Citibank, N.A., 2001 WL 1135943, at *9 (S.D.N.Y. 2001) (leave to supplement "may be denied in the event of undue delay, bad faith, or prejudice to the opposing party").

Delay alone does not justify denial of leave to amend. See Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008); Rachman Bag Co. v. Liberty Mutual Ins. Co., 46 F.3d 230, 234 (2d Cir. 1995); Richardson Greenshields Sec., Inc. v. Lau, 825 F.2d 647, 653 n.6 (2d Cir. 1987). "The concepts of delay and undue prejudice are interrelated -- the longer the period of unexplained delay, the less will be required of the non-moving party in terms of showing prejudice." Davidowitz v. Patridge, 2010 U.S. Dist. LEXIS 42322, at *5 (S.D.N.Y. 2010). In evaluating whether prejudice would result from amendment, a court should consider whether the proposed amendment would: "(1) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (2) significantly delay the resolution of the dispute; or (3) prevent the plaintiff from bringing a timely action in another jurisdiction." Monahan v. N.Y. City Dept. of Corr., 214 F.3d 275, 284 (2d Cir. 2000) (citing Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993)).

In determining whether a proposed amendment is futile, a court must treat the motion to amend in the same manner as a motion to dismiss, looking only at the face of the complaint, any documents referred or attached to the pleadings, and accepting all the allegations of the complaint as true. See Aetna Cas & Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 604 (2d Cir. 2005); Idearc Media LLC v. Siegel, Kelleher & Kahn LLP, 2012 WL 162563, at *2-*3 (W.D.N.Y. 2012). "An amendment to a pleading is futile if the

proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." Lucente v. Int'l Bus. Machs., 310 F.3d 243, 258 (2d Cir. 2002) (internal citation omitted). Dismissal under Rule 12(b)(6) is, in turn, warranted "only if it appears beyond a doubt that the plaintiff can prove no set of facts supporting its claim that entitles it to relief." Lamb v. Henderson, 1999 WL 596271, at *2 (S.D.N.Y. 1999) (citations omitted). The decision to grant or deny a request to amend is within the discretion of the district court. See, e.g., Foman v. Davis, 371 U.S. 178, 182 (1962); John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp., 22 F.3d 458, 462 (2d Cir. 1994).

The legal standard for analyzing a motion to amend for futility is thus identical to the standard for a 12(b)(6) motion to dismiss, which is well established. In order to survive a motion to dismiss, Rule 8 requires that a plaintiff proffer "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level, on

the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555. The plausibility standard requires "more than a sheer possibility that defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

A plaintiff asserting a Section 1983 claim for retaliation for exercise of First Amendment rights by his employer must show "(1) [he] engaged in constitutionally protected speech . . . (2) [he] suffered an adverse employment action; and (3) the speech was a 'motivating factor' in the adverse employment decision." Looney v. Black, 702 F.3d 701, 717 (2d Cir. 2012) (quoting Skehan v. Vill. of Mamaroneck, 465 F.3d 96, 106 (2d Cir. 2006)). An adverse employment action "can take a wide variety of forms," Anemone v. Metropolitan Transp. Auth., 629 F.3d 97, 120 n. 14 (2d Cir. 2011), but in general, a "plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." Joseph v. Leavitt, 465 F.3d 87, 90 (2d Cir. 2006) (quoting Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000)) (discussing adverse employment actions in the context of racial employment discrimination claims); see also Kassner v. 2nd Avenue Delicatessen Inc., 469 F.3d 229, 238 (2d Cir. 2007) (discussing adverse employment actions in the context of age discrimination). Such action must be "more disruptive than a mere inconvenience or alteration of job responsibilities," such as "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished

title, a material loss of benefits, significantly diminished material responsibilities. . . " <u>Sanders v. New York City Human Resources Admin.</u>, 361 F.3d 749, 755 (2d Cir. 2004) (discussing racial discrimination and retaliation claims). A single incident of harassment is rarely deemed an adverse employment action; such actions must be so "extraordinarily severe" as to constitute "an intolerable alteration of the plaintiff's working conditions, so as to substantially interfere with or impair his ability to do his job," such as rape or "an obscene and humiliating verbal tirade." <u>Mathiramphuzha v. Potter</u>, 548 F.3d 70, 78-79 (2d Cir. 2008) (internal citations omitted) (supervisor's "unprofessional and boorish" physical encounter with plaintiff insufficient to constitute adverse employment action). Action that consists of "mere nastiness of colleagues or supervisors, or unprofessional behavior is . . . not considered adverse employment action." <u>Carlucci v. Kalsched</u>, 78 F. Supp. 2d 246, 256 (S.D.N.Y. 2000).

Because the "question of retaliation involves a defendants' motive and intent, both difficult to plead with specificity in a complaint. . . [i]t is sufficient to allege facts from which a retaliatory intent on the part of the defendants reasonably may be inferred." <u>Dougherty v. Town of North Hempstead Bd. of Zoning Appeals</u>, 282 F.3d 83, 92 (2d Cir. 2002). These facts include the passage of time. It is well established that "the causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was

closely followed in time by the adverse action." Summa v. Hofstra Univ., 708 F.3d 115, 127-28 (2d Cir. 2013) (quoting Cifra v. Gen. Elec. Co., 252 F.3d 205, 217 (2d Cir. 2001)). Logically, therefore, "retaliation will not be inferred when a long period of time passes between the exercise of a First Amendment right (protected conduct) and the imposition of the allegedly retaliatory" action. Contes v. Porr, 345 F. Supp. 2d 372, 383 (S.D.N.Y. 2004). There is no bright line rule as to the precise length of time between events that may support an inference of causation. See, e.g., Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009) (citing Hollander v. American Cyanamid Co., 895 F.2d 80, 85-86 (2d Cir. 1990) and Grant v. Bethlehem Steel Corp., 622 F.2d 43, 45-46 (2d Cir. 1980)) (comparing cases where, respectively, three-month gap was too remote and another where eight-month gap sufficiently close to support inference of causation). Because the contours of the relationship between temporal lag between events and causal connection remains undefined, courts are able "to exercise [their] judgment about the permissible inferences that can be drawn from the temporal proximity in the context of particular cases." Espinal, 558 F.3d at 129; see also Summa, 708 F.3d at 128 (considering the "particular context" of the underlying events and "other surrounding circumstances" in combination with several month gap in events).

It is undisputed that plaintiff Rivers acted promptly in moving to supplement the pleadings within a month after the April

2013 events.  See Sec. Mot. to Amend.  However, since discovery has closed and a briefing schedule had been set for defendants' summary judgment motions, permitting supplementation would unduly delay this litigation and prejudice defendants.  See, e.g., Cerilli v. Rell, 2010 WL 1330998, at *3 (D. Conn. 2010) (granting 15(d) motion to supplement after parties filed cross-motions for summary judgment would unduly delay litigation).  Because re-opening discovery into the April 2013 events would involve discovery of at least the two non-parties mentioned in the proposed Second Amended Complaint and the New York City Police Department, granting plaintiff's motion to supplement will not "promote the economic and speedy disposition of the controversy between the parties." Bornholdt, 869 F.2d at 68.

More significantly, plaintiff offers little more than speculation connecting the April 2013 events with the retaliation alleged in the complaint.  This lawsuit was filed in October 2011, and the underlying events took place starting with the July 2008 founding of Members for Change through September 2011.  See Compl. (ct. doc. 1); First. Am. Compl. ¶¶ 28-106.  Approximately five months lapsed between Mr. Rivers's arrest and the posting of the flyers and an even greater lapse in time since the events alleged in the complaint.  See Prop. Sec. Am. Compl. ¶¶ 109, 111.

Assuming this five month gap is the appropriate measure, five months' delay is not in itself so distant that causal connection is impossible, since gaps of several months may support an inference

of causation where defendants are alleged to have waited for the opportune moment to retaliate. See Summa, 708 F.3d at 128 (four month gap reasonable where alleged retaliatory events occurred on "first moment in time when [defendants] could have retaliated against [plaintiff] as she was not directly working for them over the intervening months"); Espinal, 558 F.3d at 129-30 (six month gap may support causation where "[i]t is plausible that the officers waited to exact their retaliation . . . in order to have a ready explanation for any injuries suffered by [plaintiff]"). In contrast, where there is no convincing explanation for a gap of several months, courts are much stricter about the proximity of events that plausibly bear causal connection. See, e.g., Clark Cty. School Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (where temporal proximity is plaintiff's sole evidence of causal connection, the events must have occurred in "very close" proximity; cases cited found three and four months too remote); Tuccio Development, Inc. v. Miller, 423 Fed App'x 26, 27 (2d Cir. 2011) (two month gap too distant where plaintiffs offered no other evidence to support retaliatory motive); Dayes v. Pace Univ., 2 Fed. App'x 204, 209 (2d Cir. 2001) (seven month gap too long to support causation where plaintiff's evidence regarding retaliatory animus was "minimal and ambiguous").

Critically, plaintiff not only has failed to offer an explanation for the timing of the flyers after his arrest, he does not provide any plausible explanation of how the posters relate to

-14-

the events underlying the complaint. Approximately 18 months have elapsed between the last acts of retaliation alleged in the plaintiffs' First Amended Complaint -- Ms. Crenshaw's termination in August 2011 and the assignment of Mr. Rivers to inappropriate job assignments in September 2011 -- and the acts relating to Mr. Rivers's arrest now alleged in the proposed second amended complaint. Plaintiff simply does not allege that any other retaliatory activity has taken place since the filing of the complaint and the proposed supplemental complaint.[2] Cf. Gorman-Bakos v. Cornell Co-Op Extension of Schenectady, 252 F.3d 545, 554 (2d Cir. 2001) (five month gap may support inference of causation where "plaintiffs have provided evidence of exercises of free speech and subsequent retaliatory actions" in the interim). Plaintiff provides little explanation for his assertion that the posters are in any way related to his employment with NYCHA aside from his speculation that NYCHA officials divulged the information to Local 237 supporters of defendant Rhea. While plaintiffs may ultimately be correct that the flyers were produced and disseminated by persons who had the intention of harming plaintiff Rivers's political standing in Local 237 and future elections, the next election apparently is not scheduled to take place until

---

[2] Although plaintiffs' counsel points to additional actions by defendants in his letter of January 24, 2014, those acts apparently occurred after Rivers returned from leave in June 2013 and hence involved a greater lapse in time since the original retaliatory activities alleged.

October 2014, more than a year after the posting.  Aff. of John Rhea (ct. doc. 58-1) ¶ 8.

Although plaintiff speculates about who communicated what information to the person or persons who posted the flyers, there is no plausible indication that any of the defendants were involved with the April 2013 events.  The only persons named specifically by plaintiff are Mr. Curtis Scott, who is a non-party "supporter" of defendant Floyd and has no apparent employment relationship with plaintiff, and Mr. Randy Thorne, who is a member of Members for Change.  Prop. Sec. Am. Compl. ¶¶ 111-12.  Plaintiff explains that he reported the arrest to NYCHA's Office of the Inspector General without suggesting how any of the NYCHA defendants would be privy to such confidential information, let alone how they or the Union defendants would acquire a copy of the police report.[3]  Plaintiff's "mere conclusions and reference to a conspiracy are insufficient to satisfy the pleading standards."  Andino v. Fischer, 698 F. Supp. 2d 362, 373 (S.D.N.Y. 2010); see also Pleener v. New York City Bd. of Educ., 2007 WL 2907343, at *16 (retaliation claim dismissed where plaintiff offered no more than conclusory assertions that harassing incident "had any connection whatsoever" with protected activity).

In addition to the absence of a connection between the supplemental pleadings and the current operative complaint,

---

[3] As defense counsel correctly notes, the arrest of Rivers is a matter of public record.  According to the records of the New York State Unified Court System available on Webcrims, the charges against Rivers are still pending and the next court appearance is scheduled for April 17, 2014 in the Kings County Criminal Court.

plaintiff's proposed supplement is futile because he fails to allege an adverse employment action. Plaintiff does not assert that he suffered any change in salary, benefits, title or job responsibilities because of the posting of the flyers. As noted, the only connection between the allegations regarding the posters to any aspect of plaintiff Rivers' employment is his speculation that NYCHA disclosed the fact of his arrest to members of Local 237 who support the leadership of defendant Rhea. Prop. Sec. Am. Compl. 144-45. Even if carried out at the behest of defendants in retaliation for the reasons alleged – and plaintiff's allegations to that effect are deficient as discussed – such actions are unprofessional and highly inappropriate but do not rise to the "extraordinarily severe" level that constitutes a material change in the terms and conditions of plaintiff's employment. See, e.g., Negron v. Rexam, Inc., 104 Fed. App'x 768, 770 (2d Cir. 2004) (posting of photographs humiliating to plaintiff did not constitute adverse employment action); Grant v. Rochester City School Dist., 2013 WL 3105536, at *7 (W.D.N.Y. 2013) ("Loss of reputation is not generally considered an adverse employment action"); Uddin v. City of New York, 2009 WL 2496270, at *17 (S.D.N.Y. 2009) (ordering plaintiff to leave employment premises and calling police when plaintiff disobeyed that order did not constitute adverse employment action); Ellis v. Long Island Rail Road Co., 2008 WL 838766, at *6 (E.D.N.Y. 2008) (dissemination of posters banning plaintiff from work premises was not adverse employment action).

This is not to say that plaintiff Rivers has no possible cause of action against any persons involved in the posting of the flyers, to the extent that he is able to name any individuals involved. However, the proper forum for such action is not this particular litigation, which concerns retaliatory employment actions taken by defendants in response to Mr. Rivers's involvement with Members for Change. Since the April 2013 events happened relatively recently, if he chooses to initiate a separate lawsuit to pursue the perpetrators of the flyers, it is highly probable that the statute of limitations on any tort he may allege has not yet run.

## CONCLUSION

For the foregoing reasons, plaintiff Rivers's motion for leave to file supplemental pleadings and to re-open discovery as to the April 2013 events is denied. As previously ordered by the Honorable Kiyo A. Matsumoto, the parties shall file a joint status report within seven days of the filing of this order.

**SO ORDERED.**

Dated:    Brooklyn, New York
           March 31, 2014

/s/_____
MARILYN D. GO
UNITED STATES MAGISTRATE JUDGE